## Commonwealth v. Doe

*J. Michael Eakin, Assistant District Attorney,* for Commonwealth.

*John H. Broujos,* for defendant.

SHUGHART, P. J., December 7, 1976—On September 11, 1976, pursuant to a warrant, a search was conducted at the premises located at —— Street in Carlisle. A significant quantity of drugs and drug related paraphernalia were seized. It is this evidence which the defendant, who was present at the time of the search, seeks to suppress on the ground that the search was conducted at nighttime in violation of Pa.R.Crim.P. 2003(c). We agree and, therefore, order the evidence suppressed.

The facts leading up to the search can be gleaned from the affidavit presented to the district justice to support a probable cause determination. The chain of events began when an anonymous telephone call was received by the affiant on September 10, 1976. The caller stated that one John Doe who lived at ——— Street had recently journeyed to Colorado and had returned with a quantity of drugs. The affiant proceeded to follow up this lead by calling defendant's residence at about 4:45 p.m. the next day. Affiant engaged in a conversation with a person who answered to the name of Steve. In the course of this conversation, affiant indicated a desire to purchase several pounds of drugs and the individual to whom he was speaking indicated a willingness to effect such a transac-

tion. Affiant explained he would call back at about 5:30 p.m., which he did, whereupon the sale was arranged for that evening. Defendant indicated he would be at home all evening, and affiant stated he would see him later.

After this call affiant verified the location of defendant's residence. A check with an apparently reliable, confidential informant indicated that John Doe lived with his parents at ——— Street and had recently gone to Colorado.

Armed with this information, affiant applied for a search warrant from a district justice in Shippensburg, and the warrant was issued at 8:30 p.m. on September 11, 1976. The warrant authorized a search as soon as practicable, but in any event, not later than 6:00 a.m. the following morning. The grant of authority to search during nighttime hours was specifically based on the following statement in the affidavit:

This warrant is to be served anytime, day or night since the possibility exists that due to manpower problems it might be served after 10:00 p.m. and should the affiant be required to wait until morning the substance to be seized may be removed, consumed, or destroyed.

Since the Commonwealth has stipulated that this was in fact a nighttime search, the only real issue before us is whether this statement by affiant together with the other averments in the affidavit presented reasonable cause for such a search.[1] We conclude that it did not.

It is evident from the affidavit that the investiga-

---

1. Pa. R.Crim.P. 2003(c) states:

"(c) No search warrant shall authorize a nighttime search unless the affidavit shows reasonable cause for such nighttime search."

tion which culminated in the challenged search was not blessed with the luxury of time. Less than two days elapsed between the time the anonymous tip was received and the time the search warrant has executed. The police reacted quickly to a situation which seemed to demand a speedy response. In this respect, their efforts are certainly to be commended. There is, unfortunately, a fatal defect in the procedure here employed and in the rationale offered to support it.

The substance of the justification for a nighttime search in this case was an alleged manpower problem. In the first instance, we are troubled by the fact that the affidavit presented nothing more than a conclusory allegation. There is no explanation whatsoever of the nature, severity, or duration of the problem. No facts are averred to support the conclusion. Furthermore, the entire statement is phrased in terms of a mere possibility of difficulty in execution. While a search warrant need not be based on certainty, it must at least be supported by probable reasons.

Of even more concern to us is the delay between the issuance of the warrant and its execution. This represents a period of at least one and one half hours. If the affiant was justified in his belief that the contraband subject to seizure would have eluded him had he been forced to wait until the next morning to search, it would seem that this concern was equally applicable to the time span between issuance and execution of the warrant.

Of critical importance, in our view however, is the utilization of the time span between 5:30 p.m. and 10:00 p.m. From a reading of the affidavit it is clear that affiant had accumulated a substantial amount of information indicating that narcotics

were being illegally possessed at ——— Street. Affiant, an experienced State Police undercover investigator, must have known that he had sufficient information to obtain a search warrant. He was equally aware of the need for quick action. We must assume from all the facts that he was also aware of the manpower problem at this time. In its brief the Commonwealth stated:

"To hold this [manpower problem] insufficient 'reasonable cause' in effect states that the affiant in this hurried situation was required to line up personnel hours in advance of search (indeed, in advance of preparing the affidavit) and have them at the ready while he travels to Shippensburg, presents the affidavit to the magistrate and returns."

That, however, is precisely what affiant should have done. Search warrants cannot be tailored to the needs and convenience of the police. They are devices created to guard and protect the individual from unreasonable intrusion into his private affairs. The comment to Pa.R.Crim.P. 2003(c) states the well recognized proposition that "nighttime intrusion into a citizen's privacy requires greater justification than an intrusion during normal business hours." To allow the police to conduct nighttime searches based upon conclusory allegations that manpower problems prevent them from executing a daytime search would effectively destroy the protection embodied in Pa.R.Crim.P. 2003(c). It is the responsibility of the police to have personnel available to carry out their vital functions. It is difficult to believe that at 5:30 p.m. on the day in question the resources of the Pennsylvania State Police could not have at least been tentatively alerted to the very real probability of an impending search. If time was of the essence, as

indeed the affidavit indicates it was, then it would seem to have been eminently more reasonable to proceed in such a fashion and obviate the "need" for a nighttime search. We are not called upon to decide here that a manpower problem could not serve as the basis for reasonable cause to search at night. On the record before us, however, we conclude that their nighttime search was unjustified.

## ORDER

And now, December 7, 1976, for the reasons set forth in the opinion filed this date, the evidence seized in the execution of the search warrant is suppressed, and the Clerk of the Court is directed to impound the opinion, this order of court, and all papers relating thereto.